# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Chao V., <br><br> Plaintiff, <br><br> v. <br><br> Andrew Saul, Commissioner of Social Security, <br><br> Defendant. | Case No. 18-cv-1734 (HB) <br><br><br> **ORDER** |

HILDY BOWBEER, United States Magistrate Judge

Pursuant to 42 U.S.C. § 405(g), Plaintiff Chao V. seeks judicial review of a final decision by the Acting Commissioner of Social Security denying his applications for supplemental security income ("SSI") and disability insurance benefits ("DIB"). The matter is now before the Court on the parties' cross-motions for summary judgment. For the reasons set forth below, the Court denies Plaintiff's motion and grants Defendant's motion.

## I.      Procedural Background

Plaintiff filed applications for SSI and DIB on July 30, 2014, alleging a disability onset date of October 1, 2012, which he later amended to July 9, 2014. (R. 40, 245, 252 [Doc. No. 11].) He claimed to be impaired by lower back problems, back and leg pain, depression, and anxiety. (R. 276.) His applications were denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ").

The ALJ convened a hearing on March 30, 2017, at which Plaintiff and a vocational expert testified. (R. 35.)

On July 13, 2017, the ALJ issued a written decision denying Plaintiff's SSI and DIB applications. (R. 7–22.) Pursuant to the five-step sequential process outlined in 20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4), the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since July 9, 2014. (R. 12.) At step two, the ALJ determined that Plaintiff had severe impairments of depression and degenerative disc disease-related low back pain with radiating bilateral leg pain. (R. 12.) The ALJ found at the third step that none of Plaintiff's impairments, considered singly or in combination, met or equaled the severity of an impairment listed in 20 C.F.R. part 404, subpart P, appendix 1. (R. 13.) The ALJ determined that Plaintiff did not meet or equal the criteria of Listing 1.04 with respect to his spinal condition, did not meet or equal the criteria of Listing 1.02 with respect to his lower extremity pain, and did not meet or equal the criteria of Listing 12.04 with respect to his depressive disorder. (R. 13.)

At step four, the ALJ concluded that Plaintiff retained the residual functional capacity ("RFC")[1] to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following restrictions: lifting, carrying, pushing, and pulling

---

[1] An RFC assessment measures the most a person can do, despite his limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The ALJ must base the RFC "on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The RFC assessment actually occurs between steps three and four of the sequential evaluation, but for ease of reference, the Court will refer to the RFC assessment as part of step four.

20 pounds occasionally and 10 pounds frequently; sitting for six hours; standing and/or walking for about 4 hours in an 8-hour workday; occasional operation of foot controls with the left foot; occasional climbing of ramps and stairs; no climbing ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, crouching, and crawling; no work at unprotected heights; and limited to simple, routine, and repetitive tasks. (R. 15.) With this RFC, the ALJ concluded, Plaintiff could not perform any past relevant work, but he could adjust successfully to other work such as plastic hospital products assembler or plastics inspector. (R. 20–21.) Consequently, the ALJ determined that Plaintiff was not disabled.

The Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. Plaintiff then filed this action for judicial review.

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.     Standard of Review

Judicial review of the Commissioner's denial of benefits is limited to determining whether substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Prosch v. Apfel*,

201 F.3d 1010, 1012 (8th Cir. 2000)). The Court must examine "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id.* (citing *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)). The Court may not reverse the ALJ's decision simply because substantial evidence would support a different outcome or the Court would have decided the case differently. *Id.* (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)). In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the Commissioner, the Court must affirm the decision. *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992).

A claimant has the burden to prove disability. *See Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir. 1995). To meet the definition of disability for DIB, the claimant must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The same standard applies to SSI. *See* 42 U.S.C. § 1382c(a)(3)(A). The disability, not just the impairment, must have lasted or be expected to last for at least twelve months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

## III.  Discussion

### A.  Plaintiff's Learning Disorder Diagnosis

Plaintiff first contends the ALJ erred by rejecting his learning disorder diagnosis. (Pl.'s Mem. Supp. Mot. Summ. J. at 11 [Doc. No. 17].) Plaintiff claims the ALJ erred at

both step two by not deeming his learning disorder a severe impairment and at step three

by not considering Listing 12.05 (intellectual disorder).

### 1. The ALJ's Consideration of Plaintiff's Learning Disorder Diagnosis at Step Two

At step two, the claimant must show he has an impairment that significantly limits

his ability to work in most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (quoting

20 C.F.R. §§ 404.1520(c), 404.1521(b)); *see* 20 C.F.R. § 416.920(c). "An impairment is

not severe if it amounts only to a slight abnormality that would not significantly limit the

claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*,

500 F.3d 705, 707 (8th Cir. 2007). That is, the impairment must have "more than a

minimal effect on the claimant's ability to work." *Id.* A claimant's "age, education, and

work experience" are not relevant to the step two inquiry. *See* 20 C.F.R. § 404.1520(c);

20 C.F.R. § 416.920(c). Rather, "medical evidence alone is evaluated in order to assess

the effects of the impairment(s) on ability to do basic work activities." SSR 85-28, 1985

WL 56856, at *4 (S.S.A. 1985). The severity showing "is not an onerous requirement for

the claimant to meet, . . . but it is also not a toothless standard." *Kirby*, 500 F.3d at 708

(citations omitted).

The ALJ acknowledged that Plaintiff was diagnosed with a learning disorder

during a neurocognitive evaluation in May 2016. (R. 13.) This diagnosis was based on

earlier test results that reflected "an equivalent full scale IQ score of 45 on the CTONI-2,

which is an examination for non-English-speaking individuals."[2]  (R. 13.)  This score

would have placed Plaintiff "in the moderately retarded range of intellectual

functioning."[3]  (R. 13.)  The ALJ found the score inconsistent with Plaintiff's daily

activities, such as driving a car and shopping at stores.  (R. 13.)  The ALJ also noted that

testing conducted in December 2015 indicated "below-average" intellectual functioning,

but not a learning disorder.  (R. 13.)  The ALJ therefore determined that the claimed

learning disorder was not a severe impairment.  (R. 13.)  Plaintiff contends the ALJ erred

in making this determination.

Jennica Tomassoni, M.A., Psy.D candidate, conducted the December 2015 testing

as part of a psychological evaluation.  (R. 820.)  She noted that individuals who were not

born in the United States may not be familiar with the pictorial portions of the various

tests.  (R. 821.)  She believed this was a factor in Plaintiff's poor and inconsistent scores.

(R. 821.)  In addition, the CTONI-2 and Bender tests do not have norms for individuals

who were not born in the United States.  (R. 821.)  Plaintiff scored in the <1 percentile

(very poor) on the CTONI-2 test, which indicated that he struggled with managing

nonverbal information, organizing spatial material, perceiving visual data, and mastering

abstract properties of visual symbols.  (R. 822.)  Plaintiff's CTONI-2 score was

---

[2]  CTONI stands for Comprehensive Test of Nonverbal Intelligence and measures an individual's nonverbal reasoning ability.  (*See* R. 654.)  It is often used to test individuals who speak other languages.  (*Id.*)

[3]  The terms "intellectual disability" and "intellectual development disorder" have replaced the historical term "mental retardation."  *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(b)(4)(B).

equivalent to a full-scale IQ score of 45.  (R. 822.)   Other test results indicated that

Plaintiff "[s]truggled greatly with delayed memory," language, and attention, and that he

had "significant difficulties with information storage, long-term memory, learning new

information and information retrieval."  (R. 822.)  Ms. Tomassoni believed there could be

several explanations for Plaintiff's performance, including not understanding the tasks,

poor verbal intellectual functioning, cultural factors, a language barrier, and mental health

symptoms.  (R. 823.)  Ms. Tomassoni concluded that Plaintiff's intellectual functioning

was below average, but she did not diagnose him with a learning disorder, intellectual

disability, or borderline intellectual functioning.  (R. 823.)

Plaintiff was referred by his attorney for a neurocognitive evaluation that was

conducted by Julie A. Vandermay, Psy.D, M.A., and Monique Lowe, Ph.D, L.P., in

May 2016.  (R. 652.)  The evaluators largely accepted and incorporated the December

2015 CTONI-2 and Bender test results and did not repeat those tests.  (R. 654.)  Since

Plaintiff understood some English, testing instructions were administered in English and

the interpreter did not interpret some of the task items.  (R. 655.)  The evaluators

diagnosed Plaintiff with a learning disorder.  (R. 658.)

Plaintiff argues there are inconsistencies between the December 2015 and

May 2016 evaluations that the ALJ did not reconcile.  The Court agrees to a limited

extent.  The May 2016 evaluation conveys a formal diagnosis of a learning disorder,

whereas the December 2015 evaluation does not, even though the May 2016 evaluation

largely incorporated and relied on the December 2015 evaluation and test results.  The

December 2015 evaluation, by contrast, describes Plaintiff's cognitive functioning as

below average.  Even below-average functioning would demonstrate more than a minimal effect on Plaintiff's ability to work.

To be considered a "medically determinable impairment," there must be some evidence of "medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521 (effective Mar. 27, 2017).  The December 2015 evaluation contained medically acceptable clinical findings that Plaintiff struggled with processing information, managing nonverbal information, perceiving visual data, organizing spatially oriented material, mastering abstract properties of visual symbols, learning new information, and retrieving information, and that Plaintiff had "significant difficulties with information storage, long-term memory, learning new information, and information retrieval."  (R. 822–23.)  The ALJ did not identify any evidence at step two to refute this evidence.  The May 2016 evaluation was not inconsistent with these findings; to the contrary, that evaluation generally relied on and incorporated them.

With respect to the ALJ's rejection of the IQ score of 45 as inconsistent with daily activities such as driving and shopping, the Court agrees that the score seems inconsistent with those activities.  But rejecting that score, in and of itself, does not establish that Plaintiff's ability to do basic work activities was not limited by his cognitive functioning. Both the December 2015 and May 2016 evaluations contain other medical evidence that Plaintiff's cognitive functioning had more than a minimal effect on his ability to work. Moreover, because "medical evidence alone is evaluated in order to assess the effects of the impairment(s) on ability to do basic work activities," SSR 85-28, 1985 WL 56856, at

*4, the Court questions whether the ALJ properly considered Plaintiff's daily activities at step two.

The Commissioner argues, however, that any error at step two is harmless because the ALJ found "Plaintiff's *depression* qualified as a severe mental impairment and evaluated its impact on his work capacity."  (Def.'s Mem. Supp. Mot. Summ. J. at 8) (emphasis added).  It is true that an error at step two in failing to assess a claimed severe impairment "is harmless if the claimant 'makes a threshold showing of any "severe" impairment [and] the ALJ continues with the sequential evaluation process and considers all impairments, both severe and nonsevere.'"  *Snyder v. Colvin*, No. 12-cv-3104 (MJD/JJK), 2013 WL 6061335, at *9 (D. Minn. Nov. 18, 2013) (quoting *Bondurant v. Astrue*, No. 09-cv-328 (ADM/AJB), 2010 WL 889932, at *2 (D. Minn. Mar. 8, 2010)); *accord Lund v. Colvin*, 13-cv-113 (JSM), 2014 WL 1153508, at *27 (D. Minn. Mar. 21, 2014); *Johnson v. Comm'r of Soc. Sec.*, No. 11-cv-1268 (JRT/SER), 2012 WL 4328413, at *21–22 (D. Minn. July 11, 2012), *R. & R. adopted*, 2012 WL 4328389 (D. Minn. Sept. 20, 2012); *Lorence v. Astrue*, 691 F. Supp. 2d 1008, 1028 (D. Minn. 2010).

Depression, of course, is not the same as a learning disability or a cognitive impairment.  But the ALJ also considered at step four Plaintiff's cognitive impairments, memory deficits, cognitive test results, impaired concentration, "below-average" intellectual functioning, GED testing, claimed language barrier, and equivalent full scale IQ score of 45.  (R. 14, 17–18.)  Thus, even if the ALJ erred at step two, the error is harmless because the ALJ fully considered Plaintiff's actual cognitive impairments at step four, as discussed below.

### 2. The ALJ's Failure to Consider Listing 12.05 at Step Three

Plaintiff argues the ALJ's findings at step three are not supported by substantial evidence in the record because the ALJ did not mention Listing 12.05. Plaintiff bears the burden to establish that he had an impairment meeting or equaling a listed impairment. *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004). Plaintiff makes no attempt, however, to establish that his condition met or equaled Listing 12.05. (*See* Pl.'s Mem. Supp. Mot. Summ. J. at 14–15.) He neither identifies relevant medical evidence nor links any evidence to the requirements of the listing. The Court considers this argument undeveloped and therefore waived. *See Melder v. Colvin*, 546 F. App'x 605, 606 (8th Cir. 2013); *see also Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005) (rejecting social security plaintiff's conclusory argument "out of hand" because the plaintiff "provide[d] no analysis of the relevant law or facts"). Similarly, Plaintiff faults the ALJ for concluding the paragraph C criteria were not met, but Plaintiff fails to identify any evidence that would meet or equal the criteria. This argument is therefore also waived.

### B. The ALJ's Consideration of Plaintiff's Cognitive Functioning in the RFC Assessment at Step Four

Plaintiff contends the ALJ failed to incorporate restrictions related to his cognitive impairments in his assessment of Plaintiff's RFC at step four. (Pl.'s Mem. Supp. Mot. Summ. J. at 16.) The Court respectfully disagrees. The ALJ limited Plaintiff to simple, routine, and repetitive tasks. (R. 15.) Whether substantial evidence supports those restrictions is another question, which the Court will address below.

Plaintiff faults the ALJ for not including moderate limitations in concentration, persistence, and pace in the RFC. (Pl.'s Mem. Supp. Mot. Summ. J. at 16.) Plaintiff points out that the mental RFC reflects only that he is "limited to simple, routine, repetitive tasks" (R. 15) and fails to include limitations relating to the ALJ's finding at step three that Plaintiff was moderately limited in concentration, persistence, or pace.[4] Plaintiff submits that a restriction to simple, routine, and repetitive tasks is "insufficient to accommodate a moderate restriction in concentration, persistence and pace." (Pl.'s Mem. Supp. Mot. Summ. J. at 16) (quoting *Evenson v. Colvin*, No. 16-cv-969 (MJD/BRT), 2017 WL 2773541, at *9 (D. Minn. May 22, 2017) (citations omitted)).)

In *Evenson*, the ALJ found at *step four* that the plaintiff was moderately limited in pace and persistence, based on the ALJ's grant of great weight to the opinion of a consultative examiner who found the plaintiff limited in persistence and pace. 2017 WL 2773541, at *9. The court determined the ALJ erred because limiting a person to simple, routine, repetitive tasks in an RFC assessment may not adequately account for a finding at *step four* that the claimant was moderately restricted in concentration, persistence, and pace. *Id.* Here, on the other hand, the ALJ found no such limitations at step four. Rather, the ALJ found only at *step three* that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace. The ALJ specifically explained that the

---

[4] The Commissioner points out that the ALJ found at step three that Plaintiff was moderately limited in concentration, persistence, or pace as a result of depression when he evaluated Plaintiff's depression under Listing 12.04, not that he was moderately limited in these areas as a result of a learning disorder. The Court will keep this in mind as it proceeds with the discussion.

limitations identified at step three "are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (R. 14–15.) Mental assessment findings made at step three are not automatically imported to step four, nor do different findings at step three and step four mean the ALJ's decision is internally inconsistent. *See Gann v. Colvin*, 92 F. Supp. 3d 857, 884–85 (N.D. Iowa 2015).

The ALJ in this case gave great weight at step four to the opinions of non-examining state agency consultants. (R. 19.) Those psychologists found Plaintiff capable of understanding, remembering, and completing routine, repetitive, three-to-four step instructions. (R. 19, 105–06, 120–21, 139–41, 155–57.) That limitation is consistent with an ability to perform simple, routine, and repetitive tasks. Unlike the ALJ in *Evenson*, the ALJ in Plaintiff's case did not give great weight at step four to any medical source opinion finding moderate limitations in concentration, persistence, or pace.

In *Chismarich v. Berryhill*, which was decided after *Evenson*, the Eighth Circuit found "nothing inconsistent with the ALJ's separate analyses at the different steps." *Chismarich*, 888 F.3d 978, 980 (8th Cir. 2018). There, the plaintiff also argued that the ALJ's step-three analysis was inconsistent with the step-four RFC assessment. *Id.* at 979. The ALJ in that case had determined at step three that the claimant was moderately impaired in social functioning, activities of daily living, and concentration, persistence, or pace. *Id.* at 980. The claimant argued those findings were inconsistent with an RFC reflecting the following limitations and abilities:

> able to understand, remember, and carry out at least simple instructions and non-detailed tasks; can respond appropriately to supervisors and co-workers in a task oriented setting where contact with others is casual and infrequent; can perform work at a normal pace without production quotas; should not work in a setting which includes constant, regular contact with the general public; and should not perform work which includes more than infrequent handling of customer complaints.

*Id.* The Eighth Circuit disagreed. "Moderate difficulties in the areas noted are consistent with being able to understand, remember, and carry out simple instructions while performing non-detailed tasks." *Id.* The court explained that "the different steps serve distinct purposes, the degrees of precision required at each step differ, and our deferential standard of review precludes us from labeling findings as inconsistent if they can be harmonized." *Id.* at 980. When a step-three finding contains "generalized moderate ratings," a court should aim to harmonize the ALJ's findings and "neither pick nits nor accept an . . . invitation to rely upon perceived inconsistencies." *Id.*

Here, the ALJ's findings at steps three and four are easily harmonized. At step three, even though the ALJ determined Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace, due to depression, the ALJ also found that Plaintiff could "maintain[] focus necessary to carry out and complete a number of activities [that] require a good deal of concentration, such as operating a motor vehicle." (R. 14.) The ALJ also noted at step three that mental status examinations were "routinely . . . without significant abnormalities," and indicated that evidence of problems with concentration and task completion originated primarily from Plaintiff's subjective complaints. (R. 14.)

At step four, the ALJ elaborated on how Plaintiff's mental status examinations were generally not consistent with significant cognitive abnormalities or significant depression. (R. 17.) The ALJ also took into account that Plaintiff could drive a motor vehicle and shop for groceries; his overall intellectual functioning was "below average"; his speech was normal; his thought processes were linear and goal-directed; his insight was adequate; his judgment was good; his speech and language were adequate; he passed a GED test, despite his claim to the contrary[5]; he was able to communicate in English, despite his claim to the contrary; an equivalent full scale IQ score of 45 was inconsistent with an ability to earn a GED; there was no evidence of a neurocognitive decline since he passed the GED exam; he could understand, learn, remember, and carry out routine, repetitive three-to-four step instructions; and his subjective symptoms were not as severe or persistent as he claimed.[6] (R. 15–18.) The RFC's limitation to simple, routine, and repetitive tasks accurately reflects these findings. In addition, any inconsistency between these findings and the ALJ's findings at step three does not rise to the level of reversible error.

---

[5] Plaintiff told multiple providers he earned his GED. (*E.g.*, R. 580, 644, 653, 820.) He testified at the hearing, however, that he did not actually receive his GED. (R. 50.)

[6] The ALJ found Plaintiff's subjective complaints "so extreme as to appear implausible when compared with what is described in the objective medical records." (R. 17.) The ALJ discounted the claimed intensity, persistence, and limiting effects of Plaintiff's subjective symptoms because they were inconsistent with the objective medical evidence and his daily activities, and because they warranted only conservative treatment. (R. 15–18.) In addition, the ALJ identified discrepancies in the record concerning Plaintiff's claimed inability to communicate in English and contradictory statements from Plaintiff about whether he had earned his GED. (R. 17–18.) Plaintiff does not challenge the ALJ's assessment of his subjective complaints.

### C. The ALJ's Consideration of Medical Source Evidence

#### 1. Ms. Tomassoni and Dr. Picker's Evaluation in December 2015

Plaintiff contends the ALJ did not discuss "the majority" of Ms. Tomassoni and Dr. Picker's December 2015 evaluation, and specifically their statements that Plaintiff "may not be able to acquire new information without great difficulty," "may have significant difficult[y] with processing any new information he does manage to learn," "struggles greatly with delayed memory," and has "significant difficulties with . . . learning new information and information retrieval." (Pl.'s Mem. Supp. Mot. Summ. J. at 19–20 (citing R. 822–23).) The ALJ mentioned the December 2015 evaluation in his step four analysis and specifically quoted the statement, "It is very likely that with (the claimant's) significant amount of depression he would be unable to keep a job if he were able to obtain one." (R. 20.) The ALJ gave the statement little weight because it was not consistent with Plaintiff's conservative course of treatment, mostly normal status examinations (including the examination performed by Ms. Tomassoni), and Plaintiff's daily activities. (R. 20.)

The Court finds the ALJ did not err in his consideration of the December 2015 evaluation. The ALJ's reasons for giving little weight to the statement recited in the decision are supported by substantial evidence in the record. (*E.g.*, R. 580–81, 593, 609, 646–47, 688–89, 695, 698, 703, 705, 728, 730, 732, 750, 753, 755, 759, 785, 787.) That evidence consists of a generally conservative course of treatment, generally normal mental status examinations, and Plaintiff's daily activities. The ALJ's reasons also apply to the evaluation overall, including the statements identified by Plaintiff.

In addition, an ALJ need not explicitly consider and discuss each sentence in a medical source opinion. "When an ALJ specifically references findings of a medical source, the court can assume the ALJ considered the medical source's opinion." *Tremain v. Astrue*, No. 09-4239-CV-C-REL-SSA, 2011 WL 793720, at *19 (W.D. Mo. Feb. 28, 2011) (citing *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010)). The Court finds here that the ALJ considered the entire December 2015 evaluation.

The Court has already found that the equivalent full scale IQ score of 45 was inconsistent with substantial evidence in the record and therefore properly rejected by the ALJ. To the extent any question remains, the Court reiterates that the score was inconsistent with Plaintiff's daily activities and his self-reported ability to earn a GED. In addition, no medical source diagnosed Plaintiff with a moderate intellectual disability. Even Ms. Tomassoni qualified the validity of the score by noting some inherent cultural bias in the test, stating that Plaintiff's "lack of familiarity with the test likely played a role in some of his poor or inconsistent scores," observing that Plaintiff's limited English vocabulary could have affected his performance, and urging the reader of the evaluation "to keep this information in mind when reviewing the results that follow." (R. 821, 823.)

### 2. Dr. Barron's Opinion

Plaintiff submits the ALJ erred in rejecting the opinion of Dr. Robert C. Barron, Ph.D, L.P., who evaluated Plaintiff at the agency's request (Pl.'s Mem. Supp. Mot. Summ. J. at 20.)

Dr. Barron reviewed Plaintiff's medical records and interviewed him. (R. 579–80.) Much of the written evaluation recounts Plaintiff's self-reported background,

symptoms, daily activities, and limitations.  (R. 580–81.)  Plaintiff's "[a]ctive problems included knee pain, lumbar radiculopathy, bulging disc and sacral radiculopathy," but not a learning disorder or an intellectual disability.  (R. 579.)  As far as objective findings, Dr. Barron described Plaintiff's speech and language as adequate, but Plaintiff's mood and affect were abnormal, flat, and frustrated. (R. 579.)  He appeared depressed.  Plaintiff gave detailed and logical answers to questions.  (R. 580.)  His activities included bathing and changing clothes daily, driving twice a week to the grocery store or pharmacy, buying food with food stamps, managing his finances, accompanying friends who went fishing, going to the park and zoo with his girlfriend and their children for a short time, attending a soccer tournament or cultural celebration for a short time, and occasionally going to a movie.  (R. 581.)

Dr. Barron's diagnostic impression included major depressive disorder, single episode, severe; and "Rule-out Pain Disorder Associated with both Psychological Factors and a General Medical Condition versus Primary Organic Causation."  (R. 582.)  Dr. Barron concluded, "[o]n the basis of his past education and employment history," that Plaintiff could communicate, comprehend, and retain simple instructions in an entry-level employment situation.  (R. 582.)  However, based on Plaintiff's "reported subjective physical symptoms and significant restrictions of activities of daily living," Dr. Barron believed Plaintiff could not withstand work-related stressors, rapidly perform routine repetitive tasks, or meet production requirements.  (R. 582.)  Dr. Barron thought Plaintiff could independently manage financial benefits, if they were awarded.  (R. 582.)

The ALJ discounted Dr. Barron's opinion because it was based in large part on Plaintiff's subjective symptoms, which the ALJ found were not as severe as Plaintiff claimed. An ALJ may properly disregard portions of an opinion based on discredited subjective complaints. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000). Here, Dr. Barron's suggested restrictions on work-related stressors, rapid performance of routine repetitive tasks, and meeting production requirements were all explicitly based on Plaintiff's self-reported symptoms and daily activities. Thus, the ALJ properly rejected those restrictions.

Another reason the ALJ gave little weight to Dr. Barron's opinion was that the conclusions were inconsistent with the relatively normal mental status examination. (R. 19.) This reason is supported by substantial evidence. The few objective findings made by Dr. Barron were not consistent with his conclusions.

The ALJ also reduced the weight given to the opinion because Dr. Barron was not a medical doctor and thus not qualified to speculate about how Plaintiff's physical condition affected his ability to work. (R. 19.) Dr. Barron conceded as much in his evaluation when he remarked that "a medical opinion would be helpful in determining both his actual physical limitations, as well as whether surgery might improve his physical functioning." (R. 582.)

Finally, with respect to the ALJ taking account of Dr. Barron's comment that Plaintiff could manage his finances, to the extent this was an error, it was harmless. Substantial evidence supports the weight the ALJ assigned to Dr. Barron's evaluation even absent that finding.

### 3. Ms. Taylor and Dr. Johnson's Questionnaires

Plaintiff next argues the ALJ erred by giving little weight to check-the-box questionnaires completed by his treating therapist Adeline Taylor and psychologist Lisa Johnson, Psy.D in November 2015 and December 2016. (Pl.'s Mem. Supp. Mot. Summ. J. at 21.) Both questionnaires indicate that Plaintiff could not remember work-like procedures or carry out short and simple instructions, which would preclude competitive employment. (*Id.*)

The ALJ gave little weight to the opinions upon finding they were inconsistent with objective medical records, including minimal clinical findings and signs of mental illness; conservative mental health treatment; Plaintiff's daily activities; and frequent Global Assessment of Functioning (GAF) scores of 51 to 60, which indicated only moderate symptoms or functional restrictions. (R. 19–20.) The ALJ also reduced the weight of the opinions because Ms. Taylor and Dr. Johnson relied heavily on Plaintiff's subjective reports of symptoms. (R. 19–20.)

The ALJ's reasons to grant little weight to the questionnaires are supported by substantial evidence of record. The Court has already determined that the ALJ had reason to discredit opinions that were founded on Plaintiff's subjective complaints and reported daily activities. Nearly all of the written comments on the questionnaires convey Plaintiff's self-reported symptoms, limitations, and activities. (R. 618–19, 660–61.) The ALJ also correctly found the opinions inconsistent with objective medical records, including Ms. Taylor's own treatment notes and GAF score assessments. (R. 635, 637, 639, 646–47.)

Finally, it is significant that the opinions were rendered on rudimentary check-the-box forms that contained little support for the conclusions reached. *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018). Questionnaires that "consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses"—that do not recount medical evidence or provide elaboration "possess 'little evidentiary value.'" *Id.* (quoting *Toland v. Colvin*, 761 F.3d 931, 937 (8th Cir. 2014)). The ALJ was entitled to give little weight to the questionnaires on that basis alone.

### 4. Dr. Vandermay and Dr. Lowe's May 2016 Evaluation

Plaintiff contends the ALJ "completely ignored" the evaluation conducted by Dr. Vandermay and Dr. Lowe in May 2016. (Pl.'s Mem. Supp. Mot. Summ. J. at 18.) It is true that the ALJ did not specifically discuss the evaluation at step four, but he did discuss aspects of the evaluation at step two. Thus, the Court does not agree that the ALJ "completely ignored" the evaluation. The ALJ's explicit discussion of the evaluation at step two indicates that he considered and rejected it. *See Wildman*, 596 F.3d at 966; *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

Plaintiff particularly faults the ALJ for not incorporating in his RFC Dr. Vandermay and Dr. Lowe's suggested restrictions that he "would need to have material broken down into very small pieces and move at a slow pace" and "may also need extended time and additional direction." (Pl.'s Mem. Supp. Mot. Summ. J. at 18 (citing R. 657).) Contrary to Plaintiff's representation, these considerations are not described as "restrictions," but rather "recommendations," in the evaluation. (R. 657.) Moreover, an

ALJ need not discuss every piece of evidence in the record. *See Wildman*, 596 F.3d at 966. In addition, the ALJ's failure to explicitly discuss and reject the recommendations was harmless error because the recommendations were based on the Bender-Koppitz test administered by Ms. Tomassoni (*see* R. 654–55, 657, 821–22), and the ALJ properly discounted the weight afforded to opinions based on the results of that test, as discussed fully above. The ALJ's failure to explicitly discuss and reject the recommendations was also harmless error because substantial evidence weighs against the recommendations and Plaintiff has not shown the ALJ would have assessed his RFC any differently absent the error. *See Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012). Finally, the Court observes that the May 2016 evaluation occasionally refers to Plaintiff as "she" and "her," and twice identifies the subject patient as "Ms. Vue." (R. 652, 654, 656, 658.) Plaintiff is a man, and his surname is not Vue. These errors call into question how much and which portions of the evaluation actually relate to Plaintiff.

With respect to the equivalent full scale IQ score of 45, that score was assessed by Ms. Tomassoni and Dr. Picker in December 2015, and was simply echoed in Dr. Vandermay and Dr. Lowe's May 2016 evaluation. The Court has already discussed the ALJ's consideration of that score and found that aspect of the ALJ's decision supported by substantial evidence.

### D. The Opinions of the Non-Examining Psychological Consultants

Plaintiff argues the ALJ erred by "adopting" the opinions of non-examining consultants for three reasons: (1) they did not personally examine or treat Plaintiff; (2) they failed to provide restrictions for concentration, persistence, and pace; and

(3) their opinions are based on an incomplete record that predates the December 2015 and

May 2016 evaluations.  (Pl.'s Mem. Supp. Mot. Summ. J. at 17–18.)

First, the ALJ did not "adopt" the opinions of the non-examining consultants.

Rather, the ALJ gave "great weight" to the opinions (R. 17–18), as allowed by statute and

agency rule.  An ALJ must consider evidence from non-examining consultants under

20 C.F.R. § 404.1527, and such "consultants are highly qualified and experts in Social

Security disability evaluation."  20 C.F.R. § 404.1513a(b)(1).  "Findings of fact made by

State agency medical and psychological consultants and other program physicians and

psychologists regarding the nature and severity of an individual's impairment(s) must be

treated as expert opinion evidence of nonexamining sources at the administrative law

judge and Appeals Council levels of administrative review."  SSR 96-6p, 1996 WL

374180, at *1 (S.S.A. July 2, 1996).

> Medical evidence from medical sources that have not treated or examined
> the individual is also important in the adjudicator's evaluation of an
> individual's statements about pain or other symptoms. For example, State
> agency medical and psychological consultants and other program
> physicians and psychologists may offer findings about the existence and
> severity of an individual's symptoms.

SSR 16-3p, 2016 WL 1119029, at *6 (S.S.A. Mar. 16, 2016).  Though an ALJ generally

must "give more weight to the medical opinion of a source who has examined you than to

the medical opinion of a medical source who has not examined you," 20 C.F.R.

§ 404.1527(c)(1), that is not always the case, *see* SSR 96-6p, 1996 WL 374180, at *3 ("In

appropriate circumstances, opinions from State agency medical and psychological

consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources.")).

Here, the non-examining psychologists opined that Plaintiff was capable of understanding, learning, remembering, and completing routine and repetitive three-to-four step instructions. (R. 105–06, 120–21, 139–41, 155–57.) The ALJ found those opinions consistent with overall clinical findings, mental status examinations, objective observations made by Plaintiff's providers, Plaintiff's conservative course of treatment and successful response to treatment, and Plaintiff's daily activities. These findings are supported by substantial evidence of record. (*E.g.*, R. 115, 470, 581, 646–47, 688–89, 695, 698, 703, 705, 728, 730, 732, 750, 753, 755, 759, 785, 787.)

Second, as to whether the non-examining consultants failed to include restrictions relating to concentration, persistence, and pace, the Court has already discussed the ALJ's consideration of those restrictions, including the ALJ's reliance on the opinions of the non-examining state agency consultants. Plaintiff offers no basis to revisit that discussion again here.

Third, as to the completeness of the record on which the opinions were based, Plaintiff specifically identifies the December 2015 and May 2016 evaluations as evidence the non-examining consultants did not consider. (Pl.'s Mem. Supp. Mot. Summ. J. at 17–18.) As discussed *infra* and *supra*, however, the ALJ properly rejected the December 2015 and May 2016 evaluations. Correspondingly, the ALJ explicitly found that evidence received after the opinions were issued did not demonstrate any greater mental restrictions than what was opined. (R. 19.) An ALJ is not necessarily required to obtain

an updated opinion whenever new medical evidence is received. Rather, the ALJ must

"obtain an updated opinion from a medical expert only if the ALJ is of the opinion that

the additional medical evidence might change the consultant's opinion." *Michael S. v.*

*Berryhill*, No. 17-cv-5586 (TNL), 2019 WL 1430138, at *10 (D. Minn. Mar. 29, 2019).

Here, the ALJ was not of that opinion.

### E. The ALJ's Consideration of Laurie Fang's Statement

Plaintiff argues the ALJ erred by not addressing his girlfriend Laurie Fang's

description of his daily activities. (Pl.'s Mem. Supp. Mot. Summ. J. at 19 (citing

R. 368).) Fang claimed that Plaintiff had difficulty learning new information, needed

frequent reminders, did not understand documents such as forms and letters, and was

quiet and withdrawn. The ALJ gave reasons and evidentiary support for discounting

substantially similar symptoms and limitations, however, when discussing of Plaintiff's

subjective complaints and description of activities. An ALJ need not expressly address a

third party's description of symptoms and limitations when they are discredited by the

same evidence that applies to the claimant's testimony and reports. *Buckner v. Astrue*,

646 F.3d 549, 559-60 (8th Cir. 2011). While it would have been preferable for the ALJ to

explicitly address Fang's statement, his failure to do so is not reversible error. *See*

*Willcockson v. Astrue*, 540 F.3d 878, 880 (8th Cir. 2008); *Robinson*, 956 F.2d at 838.

### F. The Hypothetical Question Posed to the Vocational Expert

Plaintiff argues that the hypothetical question posed to the vocational expert at the

hearing did not incorporate all of his impairments and limitations. The Court has found,

however, that the ALJ properly excluded the impairments and limitations for which

Plaintiff advocates.  A hypothetical question must "include only those impairments that the ALJ finds are substantially supported by the record as a whole."  *Hinchey v. Shalala*, 29 F.3d 428, 432 (8th Cir. 1994).  Here, the hypothetical question accurately incorporated the impairments and limitations set forth in the ALJ's RFC.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Doc. No. 16] is **DENIED**; and

2. Defendant's Motion for Summary Judgment [Doc. No. 19] is **GRANTED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

Dated: September 26, 2019          _s/ Hildy Bowbeer_____
                                   HILDY BOWBEER
                                   United States Magistrate Judge